IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| REID B. REYNOLDS,<br><br>　　Plaintiff,<br><br>v.<br><br>COTTONWOOD DISTRIBUTION, LLC,<br><br>　　Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Case No. 2:24-cv-00701-JNP-DBP<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Dustin B. Pead |

Before the court is a Motion to Dismiss filed by Defendant Cottonwood Distribution, LLC ("Defendant" or "Cottonwood"). ECF No. 8 ("Def.'s Mot."). Plaintiff Reid B. Reynolds ("Plaintiff") alleges that Defendant violated the Americans with Disabilities Act ("ADA") and the Civil Rights Act of 1964 ("Title VII") by discriminating against him for his disability and failing to provide reasonable accommodations. Defendant moves to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For reasons set forth herein, Defendant's Motion to Dismiss is **GRANTED**.

## BACKGROUND

Plaintiff started working at Cottonwood, a wholesale food and beverage distributor, on July 11, 2014. He began as a delivery driver and eventually rose to management-level positions. Plaintiff has social anxiety disorder, ADHD, obsessive compulsive disorder, and major depressive disorder. He has taken several medications and seen therapists to treat these disorders over the

years. Because of his mental health conditions, Plaintiff can be abrasive and impatient with others even though he does not perceive himself as such.

In 2021, Plaintiff was promoted to Night Warehouse Assistant Manager under Lisa Pieske. In fall of 2022, Plaintiff had an incident with a subordinate employee in which he had scolded the employee at a meeting in public, causing her to leave the meeting in tears. After the incident, Plaintiff spoke with the Warehouse Operations Manager, Dave Rueckert, who told Plaintiff that he was out of line. Plaintiff then discussed the issues he was having in the Assistant Manager position with Rueckert. He complained to Rueckert that Pieske was not a supportive manager and that he was feeling immense stress in the work environment. He confided in Rueckert that he was seeing a therapist and psychiatrist for anxiety and depression.

Shortly after the incident, Plaintiff was promoted to Night Warehouse Manager ("Night Manager") when Pieske was transferred to a new position. When Plaintiff became Night Manager, his supervisors began to receive numerous complaints from employees under his supervision about his lack of patience and treatment of his subordinates.

On September 21, 2022, Rueckert met with Plaintiff to discuss his management performance. In this meeting, Plaintiff again discussed his mental health issues with Rueckert. He then requested what he alleges is an accommodation for those disorders: more patience, feedback, and management training. Rueckert told Plaintiff that if something did not change, he would be removed from management. Soon thereafter, Plaintiff began meeting with Kimberly Goodrich, a Human Resources ("HR") Manager. Goodrich told Plaintiff that the meetings were to help him. But Plaintiff alleges that the meetings made him uncomfortable, and he felt HR was monitoring him very closely.

Less than a year later, Rueckert met with Plaintiff again to discuss Plaintiff's behavior involving sarcasm and aggression toward his coworkers. Rueckert documented that "[t]here has been a history of these behaviors that I have been working on with [Plaintiff] over the past 1 to 2 years. There has been a period of success, but the unacceptable behavior keeps returning." Compl. ¶ 46. Following the meeting, Plaintiff was put on suspension for three days without pay.

Soon thereafter, Rueckert emailed the company's HR director summarizing the issues Cottonwood was experiencing with Plaintiff. Rueckert wrote that Plaintiff was "sarcastic, aggressive, and to the point of being emotionally abusive to some of those that he works with." *Id.* ¶ 48. On July 30, 2023, Rueckert offered Plaintiff a non-management position with comparable pay as a delivery driver. Plaintiff refused the offer. When it became clear that he was being pushed out of the management position, Plaintiff resigned. His last date of employment at Cottonwood was August 1, 2023.

Following his resignation, Plaintiff brought this action, alleging Defendant violated the ADA and Title VII when it failed to provide reasonable accommodations for his mental health disorders. Defendant now moves to dismiss the Complaint under Rule 12(b)(6), arguing that Plaintiff fails to state a claim for relief.

## LEGAL STANDARD

The court may dismiss any action that fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In evaluating a motion to dismiss under Rule 12(b)(6), the court takes the plaintiff's well-pleaded facts as true, drawing all inferences in the plaintiff's favor. *See Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006); *see also Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's []

complaint alone is legally sufficient to state a claim for which relief may be granted." (internal quotation marks omitted)). But the plaintiff must allege some facts, not just legal conclusions, to support that inference. *See Anupama Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019). "Pleadings that do not allow for at least a reasonable inference of the legally relevant facts are insufficient." *Id.*

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Under the standard clarified by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "[t]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570). Indeed, "[a] plaintiff must 'nudge [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss." *Id.* (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Defendant argues that Plaintiff's claims should be dismissed for failure to state a claim. Specifically, Defendant argues that Plaintiff fails to state plausible claims for disability discrimination and failure to accommodate.

As an initial matter, Plaintiff argues in his opposition to Defendant's motion that the court must "focus on whether a plaintiff's pleading has set forth a claim which is plausible, not necessarily whether a plaintiff has included in his complaint sufficient factual matter to satisfy each element of each cause of action." ECF No. 17 ("Pl.'s Opp.") at 2. But in the opinion that Plaintiff cites, the Tenth Circuit notes that although a plaintiff need not establish a prima facie case, "the elements of each alleged cause of action help to determine whether [the plaintiff] has

set forth a plausible claim. Thus, we start by discussing the elements a plaintiff must prove to establish a claim for discrimination . . . ." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Accordingly, in analyzing whether Plaintiff has set forth a claim that is plausible, the court begins its analysis of each claim by discussing the elements that Plaintiff must prove.

I.  **Disability Discrimination**

To allege a claim for disability discrimination, Plaintiff must allege that he "(1) [is] a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability." *EEOC v. Picture People, Inc.*, 684 F.3d 981, 985 (10th Cir. 2012). Defendant argues that Plaintiff fails to plausibly allege the second element, that he was qualified for his position as Night Manager.

Plaintiff bears the burden of establishing the second element. *See Mason v. Avaya Communs., Inc.*, 357 F.3d 1114, 1119 (10th Cir. 2004). And courts employ a two-part analysis to determine whether the plaintiff has met his burden:

> First, the court determines whether the individual can perform the essential functions of the job. . . . Second, if (but only if) the court concludes that the individual is unable to perform the essential functions of the job, the court determines whether any reasonable accommodation by the employer would enable [him] to perform those functions.

*Id.* at 1118. "Essential functions are the fundamental job duties of the employment position the individual with a disability holds or desires." *Id.* at 1119.

Plaintiff acknowledges that an essential function of Night Manager is managing employees. The court agrees. And Defendant does not dispute that managing employees is an essential function of the job. But Plaintiff asserts that "[h]ow he [managed employees] was not

necessarily an essential function of his job." Pl.'s Opp. at 14. Yet, the test is whether Plaintiff was qualified to perform the essential functions of his job, which inevitably includes an analysis of *how* Plaintiff managed employees. Plaintiff's argument here is akin to arguing that an essential function of a forklift operator does not include *how* the employee operates the forklift. If the forklift operator operates the forklift in an unsafe manner or with poor skill, he is clearly not qualified to perform an essential function of his job. Plaintiff's argument is therefore misplaced.

Plaintiff then argues that he was qualified to perform this essential function because he had worked for Cottonwood for several years and the company had promoted him to the position of Night Manager. Indeed, there is no dispute that Plaintiff had the knowledge and experience on paper necessary to be promoted to a managerial position. But, as Plaintiff admits repeatedly in his Complaint, he was unable to effectively manage his employees due to his abrasive personality. Compl. ¶¶ 15, 28, 37-40. With these facts in mind, the court finds that Plaintiff has not set forth a plausible claim that he was qualified to perform the essential functions of his job.

Part of managing employees is the management part itself, which requires a certain temperament and interpersonal skillset. Plaintiff may have established that he had experience working in the warehouse and as a delivery driver, a skillset that undoubtedly led to his promotion to management. But he does not plausibly allege that he had the qualifications to manage people. This is an entirely different skillset. Indeed, the Complaint alleges that Plaintiff repeatedly received feedback for his treatment of his employees and poor management. Plaintiff's supervisor, Rueckert, told HR that Plaintiff was emotionally abusive to his co-workers. Thus, the factual allegations in the Complaint, even when taken as true, do not "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Accordingly, the court moves to the second part of the inquiry – whether any reasonable accommodation would allow Plaintiff to effectively manage his employees. Plaintiff argues that he requested an accommodation of more patience, feedback, and management training. But Plaintiff's accommodation requests are ambiguous, and he fails to identify how any of those "accommodations" would have allowed him to perform the essential function of managing people. The ADA's implementing regulations contemplate "an informal, interactive process with the individual with a disability in need of the accommodation" to determine what accommodation is appropriate. 29 C.F.R. §1630.2(o)(3). "This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Id.*

Plaintiff's Complaint does not allege that he instigated any informal, interactive process or requested any specific accommodation that would have allowed him to perform the essential functions of his job. While he alleges that he requested "more patience and feedback" and "management training," he does not identify in the Complaint what he meant or how any of those alleged accommodations would have allowed him to perform the essential functions of his job as Night Manager. Based on the factual allegations in the Complaint, it appears that what Plaintiff needed was mental health therapy, which he was already receiving. But Plaintiff does not allege that he requested any accommodation that would allow him to obtain or receive additional treatment for the mental health conditions that he now alleges were the reason he was unable to perform the essential functions of his position as Night Manager. Because Plaintiff fails to identify how more patience and feedback would have allowed him to perform the essential functions of his job, Plaintiff's claim that he requested accommodations that would have allowed him to perform the essential functions of his job as Night Manager is not plausible.

Further, even if Plaintiff had made a connection between the requested "accommodations" and the essential functions of his job, Plaintiff's Complaint acknowledges that Cottonwood did give Plaintiff patience, feedback, and management training. Plaintiff not only received consistent HR counseling, but he was allowed to stay in a management position for nearly two years. A request for more "patience" from Cottonwood would have been unreasonable because Plaintiff's tenure as Night Manager was negatively impacting other employees. As Plaintiff acknowledges, Cottonwood received numerous complaints that Plaintiff was impatient with his co-workers. The patience that Cottonwood exhibited for Plaintiff's behavior over the course of two years resulted in Plaintiff's subordinates receiving less patience. And Plaintiff is not entitled to continue to emotionally abuse the employees he supervised under the guise of a "reasonable accommodation."

In short, Plaintiff wholly fails to allege a plausible claim of disability discrimination. He openly admits that his abrasive personality prevented him from effectively managing his employees, and he fails to connect how any accommodation he requested would have allowed him to perform those essential functions. Therefore, Plaintiff fails to state a plausible claim for disability discrimination and the court dismisses his first cause of action.

## II.    Failure to Accommodate

Next, Defendant argues that Plaintiff fails to state a claim for failure to accommodate. A claim for failure to accommodate requires a showing of four elements: (1) Plaintiff was disabled, (2) Plaintiff was otherwise qualified, (3) Plaintiff requested a plausibly reasonable accommodation, and (4) Cottonwood refused to accommodate Plaintiff's disability. *Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020). As stated above, Plaintiff fails to allege a plausible claim (1) that he was qualified for the job as Night Manager or (2) that he requested reasonable accommodations. And because Plaintiff did not allege a plausible claim that he requested a

reasonable accommodation, he also cannot show that Cottonwood refused to accommodate him under the fourth element. Thus, Plaintiff has not alleged a plausible claim for failure to accommodate. The court therefore dismisses Plaintiff's claim for failure to accommodate under Rule 12(b)(6).

## CONCLUSION AND ORDER

For the reasons above, the court **GRANTS** Defendant's Motion to Dismiss. Plaintiff's claims are dismissed without prejudice.

DATED September 12, 2025

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge